Sophia M. Rios (SBN 305801)
**BERGER MONTAGUE PC**
8241 La Mesa Blvd, Suite A
La Mesa, CA 91942
Tel: (619) 489-0300
Fax: (612) 584-4470
srios@bergermontague.com

Zachary M. Vaughan*
**BERGER MONTAGUE PC**
1001 G Street, NW
Suite 400 East
Washington, DC 20001
Tel: (215) 875-4602
zvaughan@bergermontague.com
*pro hac vice forthcoming

Counsel for Plaintiff

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Alexandra Mandel, on behalf of herself and all others similarly situated, | Case No. 3:25-cv-09780 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| Last Brand, Inc. d/b/a Quince, | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

Plaintiff Alexandra Mandel ("Plaintiff") brings this class action, on behalf of herself and all others similarly situated, against Defendant Last Brand, Inc. d/b/a Quince ("Defendant" or "Quince") over Quince's use of deceptive marketing and pricing practices.

**GENERAL ALLEGATIONS**

1. Quince falsely advertises its products as luxury-quality goods sold at radically low prices, comparing them directly to high-end brands such as Loewe, Toteme, and Brooklinen.

2. Quince's pricing scheme creates the illusion of a bargain where none exists, inducing consumers to make purchases under the mistaken belief that they are receiving a deal. Through the use of strikethrough pricing and statements such as "You save X%," Quince misleads consumers into believing they are purchasing products equivalent to luxury-brand goods at a steep discount.

3. These representations are not only false, but they also violate California's consumer protection laws, including California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumers Legal Remedies Act ("CLRA").

4. Through this action, Plaintiff, on behalf of herself and the Class set forth below, seeks to recover under California law for Quince's misconduct.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction under the Class Action Fairness Act because class members and Quince are citizens of different states, the matter in controversy exceeds $5,000,000, and there are at least 100 members of the Class.

6. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in San Francisco, including in this District and Division. Additionally, venue is proper in this Court under 18 U.S.C. § 1965(a) because Quince transacted its affairs in this District and Division.

7. The **Divisional Assignment.** Under Civ. L.R. 3-2(c), this action should be assigned to the San Francisco Division, as the claims arise from events that occurred in San Francisco County.

**THE PARTIES**

8. Plaintiff is a natural person, citizen of the State of California, and resident of Oakland, California.

9. Defendant Last Brand, Inc. d/b/a Quince is a Delaware corporation with its headquarters at 2012 16th Street, San Francisco, California.

**FACTUAL ALLEGATIONS**

**A.     The Quick Rise of Quince**

10. Founded in 2018, Quince is a San Francisco-based direct-to-consumer ("DTC") e-commerce brand offering clothing, home goods, accessories, and travel products.

11. The brand claims to source high-quality materials (like Mongolian cashmere, mulberry silk, and organic linen) directly from factories—thereby eliminating traditional markups and offering premium quality at more accessible prices.

12. Since its launch, Quince has experienced rapid growth, expanding from a small catalog of cashmere sweaters and silk blouses to a wide array of categories including bedding, luggage, and kitchenware. The company has attracted significant investor interest, raising hundreds of millions of dollars in venture capital and achieving a multi-billion-dollar valuation. Quince's marketing strategy—centered on comparisons to "traditional retail" and luxury brands—has helped it gain traction in the market.

**B.     Quince's Deceptive Advertising**

13. As illustrated by the example below, which is emblematic of the pricing Quince's website displays for all of its products, Quince's pricing practices are misleading in several distinct and compounding ways.

**Mongolian Cashmere Oversized Crewneck Sweater**

★★★★★ (1575 REVIEWS)

$119.90 ~~$298.00~~
You save 60%   Traditional retail

14. First, by using a strikethrough over a supposed "[t]raditional retail" price, Quince creates the impression that its product is on sale. In reality, the Quince product has never been offered, or sold, at the supposed "traditional retail" price.

15. Instead, Quince's "traditional retail" price refers to a price that a different retailer charged for a different product entirely. Quince's visual cues suggest an apples-to-apples comparison, implying that the Quince product was once sold—or could have been sold—at the struck-through price.

16. In reality, however, Quince's products have never been sold at the "traditional retail" price shown on the website, and are *not* the same as the other, *different* products used by Quince to identify the purported "traditional retail" price. Instead, the products Quince uses to establish the "traditional retail" price are products sold by luxury brands that vary significantly from Quince's products in terms of quality, design, brand prestige, and market positioning. Quince's implied comparison is thus not only speculative but also deceptive, as it falsely equates Quince's offerings with those of unrelated, unaffiliated luxury retailers.

17. Quince's inclusion of the statement "You save 60%" next to Quince's own price falsely states that the consumer is receiving a meaningful "savings" when in reality, the product Quince is selling has never been sold, by anyone, at the supposed comparison price. So the consumer is "saving" nothing.

18. To be clear, Quince's products are not on sale—they are simply being sold at their regular price. The "You save X%" language therefore misleads consumers into believing they are

benefiting from a temporary or promotional markdown, when in fact they are not.

19. The cumulative effect of these tactics is that Quince intentionally communicates to consumers that they are getting a deal, either by purchasing a luxury-equivalent product at a fraction of the price or by taking advantage of a limited-time "sale" on Quince's own website.

20. Quince's representations are false. Its pricing strategy is designed to manufacture a sense of urgency and value that does not exist, thereby manipulating consumer behavior and inducing purchases under false pretenses.

21. Because a reasonable consumer would be misled by Quince's conduct, the conduct violates California's UCL, FAL, and CLRA.

C. **Plaintiff's Experience**

22. Plaintiff, a resident of California, purchased a variety of items from Quince in the four years preceding the filing of this complaint, including cashmere sweaters, other clothing, home goods, and bedding.

23. In connection with each of these purchases, based on Quince's representations and practices, Plaintiff was under the impression that the product she was purchasing from Quince was the same as the product sold at the "[t]raditional retail" price displayed on Quince's website.

24. Plaintiff was persuaded to make her previous purchases at Quince by Quince's pricing scheme: *i.e.*, comparing each product to a "traditional retail" price and advising consumers that they would "save X%" by purchasing the product at Quince.

25. As a result of Quince's deceptive pricing scheme, Plaintiff purchased Quince products that she otherwise would not have purchased, or at the very least, she would not have paid as much as she did, had Quince been truthful.

**CLASS ACTION ALLEGATIONS**

26. Plaintiff asserts claims on behalf of the proposed Class defined as follows:

All persons in the United States who, within the four years preceding the filing of this action (the "Class Period"), purchased from Defendant one or more products advertised at a purported discount from an advertised reference price and who have not received a full refund or credit for their purchase(s).

27. The Class meets the standard for certification pursuant to both Federal Rule 23(b)(2) and Rule 23(b)(3).

**A.  Numerosity**

28. Class members are so numerous that joinder of all members is impracticable. Plaintiff is informed and believes that the proposed Class contains hundreds of thousands of individuals who have been damaged by Defendant's conduct as alleged herein. The precise number of class members is unknown to Plaintiff.

**B.  Commonality**

29. This action involves common questions of law and fact, which predominate over any questions affecting individual class members. These common legal and factual questions include, but are not limited to, the following:

   a. whether, during the Class Period, Quince used falsely advertised reference prices on its products and falsely advertised price discounts on merchandise sold;

   b. whether Quince ever offered items for sale or sold items at their advertised reference price;

   c. whether, during the Class Period, the original price advertised by Quince was the prevailing market price for the products in question during the three months preceding the dissemination and/or publication of the advertised former prices;

   d. whether Quince's purported sale prices advertised reflected any actual discounts or savings;

   e. whether Quince's purported percentage-off discounts advertised reflected any actual discounts or savings;

   f. whether Quince's alleged conduct constitutes violations of the laws asserted;

   g. whether Quince's alleged conduct constitutes violations of federal and/or California pricing regulations;

   h. whether Quince engaged in an unconscionable commercial practice, and/or employed deception or misrepresentation under the laws asserted;

      i.    whether Plaintiff and class members are entitled to damages and the proper measure of that loss; and

      j.    whether an injunction is necessary to prevent Quince from continuing to use false, misleading or illegal price comparison.

**C.**    **Typicality**

30.    Plaintiff's claims are typical of the claims of the class members because, *inter alia*, all class members have been deceived (or were likely to be deceived) by Quince's false and deceptive price advertising scheme, as alleged herein. Plaintiff is advancing the same claims and legal theories on behalf of herself and all class members.

**D.**    **Adequacy**

31.    Plaintiff will fairly and adequately protect the interests of the class members. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no antagonistic or adverse interest to those of the Class.

**E.**    **Predominance and Superiority**

32.    The nature of this action and the nature of laws available to Plaintiff and the Class make the use of the class action format a particularly efficient and appropriate procedure to afford relief to Plaintiff and the Class for the wrongs alleged. The damages or other financial detriment suffered by individual class members is relatively modest compared to the burden and expense that would be entailed by individual litigation of each of their claims against Quince. It would thus be virtually impossible for Plaintiff and class members, on an individual basis, to obtain effective redress for the wrongs done to them. Without this class action, class members and the general public would not likely recover, or would not likely have the chance to recover, damages or restitution, and Quince would be permitted to retain the proceeds of its fraudulent and deceptive misdeeds.

33.    All class members, including Plaintiff, were exposed to one or more of Quince's misrepresentations or omissions of material fact claiming that former reference prices advertised

prices were legitimate. Due to the scope and extent of Quince's consistent false sale prices, disseminated over a years-long campaign to consumers, it can be reasonably inferred that such misrepresentations or omissions of material fact were uniformly made to all members of the Class. In addition, it can be reasonably presumed that all class members, including Plaintiff, affirmatively acted in response to the representations contained in Quince's false advertising scheme when purchasing merchandise from Quince.

34. On information and belief, Quince keeps extensive computerized records of its customers through, *inter alia*, customer loyalty programs and general marketing programs. Quince has one or more databases through which a significant majority of class members may be identified and ascertained, and they maintain contact information, including email and home addresses, through which notice of this action could be disseminated in accordance with due process requirements.

**F.   Defendant has Acted Uniformly As to Class Members**

35. The nature of Quince's misrepresentations on its website are uniform as to all class members, so final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

## CAUSES OF ACTION

**FIRST CLAIM FOR RELIEF**
**Violation of California's Unfair Competition Law ("UCL")**
**(On Behalf of Plaintiff and the Class)**

36. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

37. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Quince for violations of California's UCL, Cal. Bus. & Prof. Code § 17200, *et seq*.

38. The UCL defines "unfair business competition" to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising.

Cal. Bus. & Prof. Code § 17200.

39. The UCL imposes strict liability. Plaintiff and members of the proposed Class need not prove that Quince intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

*"Unfair" Prong*

40. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practice against the gravity of the harm to the alleged victims.

41. Quince's actions constitute "unfair" business practices because, as alleged above, Quince engaged in misleading and deceptive price comparison advertising that represented false reference prices and corresponding deeply discounted phantom "sale" prices. Quince's acts and practices offended an established public policy of transparency in pricing, and constituted immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

42. The harm to Plaintiff and members of the proposed Class outweighs the utility of Quince's practices because Quince's practice of advertising false discounts provides no utility. There were reasonably available alternatives to further Quince's legitimate business interests other than the misleading and deceptive conduct described herein.

*"Fraudulent" Prong*

43. A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

44. Quince's acts and practices alleged above constitute fraudulent business acts or practices as they have deceived Plaintiff and members of the proposed Class and are highly likely to deceive members of the consuming public. Plaintiff and members of the proposed Class relied on Quince's fraudulent and deceptive representations regarding its false or outdated "original prices" or "traditional retail" for products sold by Quince. These misrepresentations played a

substantial role in Plaintiff's and members of the proposed Class's decision to purchase the product at a purportedly steep discount, and Plaintiff and members of the proposed Class would not have purchased the product without Defendant's misrepresentations.

***"Unlawful" Prong***

45. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

46. Quince's act and practices, as alleged above, constitute unlawful business acts or practices as it has violated state and federal law in connection with its deceptive pricing scheme. The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. § 45(a)(1)) and prohibits the dissemination of any false advertisements. 15 U.S.C. § 52(a). Under the FTC, false former pricing schemes, like Quince's, are described as deceptive practices that would violate the FTCA:

> (a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious - ***for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction - the "bargain" being advertised is a false one;*** the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price
>
> (b) A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of his business, honestly and in good faith - and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based. And the advertiser should scrupulously avoid any implication that a former price is a selling, not an asking price (for example, by use of such language as, "Formerly sold at $_____"), unless substantial sales at that price were actually made.

16 C.F.R. § 233.1(a) and (b) (emphasis added).

47. In addition to federal law, California law also expressly prohibits false former pricing schemes. The FAL, Cal. Bus. & Prof. Code § 17501, entitled "*Worth or value; statements as to former price*," states:

> For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.
>
> ***No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement*** or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

Cal. Bus. & Prof. Code § 17501 (emphasis added).

48. The CLRA, Cal. Civ. Code § 1770(a)(9), prohibits a business from "[a]dvertising goods or services with intent not to sell them as advertised," and subsection (a)(13) prohibits a business from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."

49. As detailed herein, the acts and practices alleged were intended to or did result in violations of the FTCA, the FAL, and the CLRA.

50. Quince's practices, as set forth above, misled Plaintiff, the proposed Class, and the public in the past and will continue to mislead in the future. Consequently, Quince's practices constitute an unlawful, fraudulent, and unfair business practice within the meaning of the UCL.

51. Quince's violations of the UCL, through its unlawful, unfair, and fraudulent business practices, are ongoing and present a continuing threat that members of the proposed Class and the public will be deceived into purchasing products based on price comparisons of arbitrary and inflated "reference" prices and substantially discounted "sale" prices. These false comparisons created phantom markdowns and lead to financial damage for consumers like Plaintiff and the members of the proposed Class.

52. Pursuant to the UCL, Plaintiff and members of the proposed Class are entitled to

preliminary and permanent injunctive relief enjoining Quince from further engagement in this unfair competition, as well as disgorgement and restitution to Plaintiff and the proposed Class of all of Quince's revenues that were wrongfully obtained from them as a result of its unfair competition, or such portion of those revenues as the Court may find equitable.[1]

**SECOND CLAIM FOR RELIEF**
**Violation of California's False Advertising Law ("FAL")**
**(On Behalf of Plaintiff and the Class)**

53. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

54. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Quince for violations of California's FAL, Cal. Bus. & Prof. Code § 17500, *et seq*.

55. Cal. Bus. & Prof. Code § 17500 provides:

---

[1] California permits broad discretion to fashion remedies as needed, and "the appropriate measure of recovery [under the equitable provisions of California's consumer protection laws] depends on the nature of the case and the alleged harm that [a plaintiff] suffers." *Le v. Kohls Dept. Stores, Inc.*, 160 F. Supp. 3d 1096, 1104 (E.D. Wis. 216). "California's consumer protection laws…authorize multiple forms of restitutionary recovery." *Id.* at 1105; *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015) ("[I]n calculating restitution under the UCL and FAL, the focus is on the difference between what was paid and what a reasonable consumer would have paid at the time of purchase without the fraudulent or omitted information."); *Jacobo v. Ross Stores, Inc.*, 2016 WL 3482041, at *7 (C.D. Cal. Feb. 23, 2016) ("Remedy for the alleged misconduct is not limited to the difference between the value of the goods [p]laintiffs purchased and the price for those goods."); *Russell v. Kohl's Dep't Stores, Inc.*, 2015 WL 12781206, at *3-4 (C.D. Cal. Oct. 6, 2015) (explaining why cost minus value is not the exclusive method of measuring restitution); *Spann v. J.C. Penney Corp.*, 2015 WL 1526559, at *4 (C.D. Cal. Mar. 23, 2015) ("[A]lthough California case law makes clear that [cost minus value] can be a measure of restitution, defendant has not cited, nor has the court found, any authority indicating that is the only way restitution can be calculated."); *Johns v. Bayer Corp.*, 2012 WL 1520030, at *5 (S.D. Cal. Apr. 30, 2012) (finding that neither *In re Vioxx* nor any other case cited by the defendant "suggest[ed] that the difference in price paid and value received is the only proper measure of restitution"); *Stathakos v. Columbia Sports. Co.*, 2016 WL 1730001, at *4 (N.D. Cal. May 2, 2016) (challenge to restitution methodology premature at motion to dismiss stage); *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 792 (2015) (explaining that *In re Vioxx Class Cases*, 180 Cal. App. 4th 116 (2009) did not limit measuring restitution to the price/value differential).

> It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of . . . personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that . . . personal property or those services . . . which is ***untrue or misleading***, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . .

(emphasis added).

56. The "intent" required by section 17500 is the intent to make or disseminate personal property (or cause such personal property to be made or disseminated), and not the intent to mislead the public in the making or dissemination of such property.[2]

57. In engaging in the false reference pricing scheme described herein, Quince knew, or should have known by the exercise of reasonable care, that its reference prices were untrue and/or misleading to consumers.

58. Similarly, Cal. Bus. & Prof. Code § 17501 provides that "no price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price . . . within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly, and conspicuously stated in the advertisement."

59. Quince's routine of advertising discounted prices from false "reference" prices, which were never the prevailing market prices of those products and were materially greater than the true prevailing prices (*i.e.*, Quince's actual sale price), constitutes an unfair, untrue, and misleading practice. This deceptive marketing practice gave consumers the false impression that the products were regularly sold on the market for a substantially higher price than they actually were; therefore, leading to the false impression that the products sold by Quince were worth more

---

[2] *See Epperson v. Gen. Motors, LLC*, No. 23-01554, 2023 WL 8628327, at *5 (S.D. Cal. Dec. 13, 2023); *see also Nationwide Biweekly Admin., Inc. v. Superior Ct. of Alameda Cnty.*, 9 Cal. 5th 279, 337 n.3 (2020) (Kruger, J., concurring).

than they actually were.

60. Quince misled consumers by making untrue and misleading statements and failing to disclose what is required as stated in the Code alleged above.

61. As a direct and proximate result of Quince's misleading and false advertisements, as well as Quince's deceptive and unfair acts and practices made during the course of Quince's business, Plaintiff and members of the proposed Class suffered ascertainable loss and actual damages.

62. Plaintiff and members of the proposed Class request that this Court order Quince to restore this money to Plaintiff and the proposed Class, and to enjoin Quince from continuing these unfair practices in violation of the FAL in the future. Otherwise, Plaintiff, members of the proposed Class, and the broader general public, will be irreparably harmed and/or denied an effective and complete remedy

### THIRD CLAIM FOR RELIEF
**Violations of California's Consumer Legal Remedies Act ("CLRA")**
**(On Behalf of Plaintiff and the Class)**

63. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

64. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Quince for violations of the CLRA, Cal. Civ. Code § 1750, *et seq*.

65. Plaintiff and each member of the proposed Class are "consumers" as defined by Cal. Civ. Code § 1761(d). Quince's sale of products were "transactions" within the meaning of Cal. Civ. Code § 1761(e). The products purchased by Plaintiff and members of the proposed Class are "goods" or "services" within the meaning of Cal. Civ. Code §§ 1761(a)–(b).

66. Quince violated and continues to violate the CLRA by engaging in the following practices proscribed by Cal. Civ. Code § 1770(a) in transactions with Plaintiff and members of the proposed Class that were intended to result in, and did result in, the sale of products: a) advertising goods or services with intent not to sell them as advertised; § 1770(a)(9); and b)

making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions; § 1770(a)(13).

67. Specifically, Quince violates § 1770(a)(9) by advertising its goods with advertised discounts which they do not actually possess, because the purported discounts are fake, as alleged more thoroughly above. Further, Quince violates § 1770(a)(13) by employing reference prices—price tags prices that are either accompanied by the word "value" or, in many cases, unaccompanied—that are false or misleading because they do not represent prices at which Quince formerly sold the goods.

68. Plaintiff asks that this Court enjoin Quince from continuing to violate the CLRA as discussed herein and/or from violating the CLRA in the future and to order restitution to Plaintiff and the proposed Class.

69. On November 13, 2025, Plaintiff, through counsel, sent a CLRA demand letter via Federal Express, signature required, to Quince that provided notice of Quince's violations of the CLRA and demanded that Quince correct, repair, replace, or otherwise rectify the unlawful, unfair, false, and deceptive practices complained of herein. A copy of this letter is attached hereto as Exhibit A.

70. If Quince fails to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of its receipt of Plaintiff's written notice, Plaintiff will seek to amend this Complaint to add claims for actual, statutory, and/or punitive damages, plus attorneys' fees and costs and any other relief that the Court deems proper.

71. Appended hereto is a declaration of venue pursuant to Cal. Civ. Code §1780(d).

**PRAYER FOR RELIEF**

Wherefore, Plaintiff, on behalf of herself and on behalf of the other members of the Class, requests that this Court award relief against Quince as follows:

a. an order certifying the Class and designating Plaintiff as the Class Representative and her counsel as Class Counsel;

  b.  awarding Plaintiff and the proposed class members damages, as appropriate;

  c.  awarding restitution and disgorgement of all profits and unjust enrichment that Quince obtained from Plaintiff and the class members as a result of its unlawful, unfair, and fraudulent business practices described herein;

  d.  awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Quince from continuing the unlawful practices as set forth herein, and directing Quince to identify, with Court supervision, victims of its misconduct and pay them all money they are required to pay;

  e.  ordering payment of damages as permitted by law, including actual, compensatory, and statutory damages, to the full extent permitted by law;

  f.  retaining jurisdiction to monitor Quince's compliance with permanent injunctive relief;

  g.  ordering Quince to engage in a corrective advertising campaign;

  h.  awarding attorneys' fees and costs; and

  i.  for such other and further relief as the Court may deem necessary or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all of the claims so triable.

Dated: November 13, 2025      Respectfully submitted,

             /s/Sophia M. Rios
             Sophia M. Rios, SBN 305801
             BERGER MONTAGUE PC

             *Counsel for Plaintiff*

**Declaration Pursuant to Cal. Civ. Code § 1780(d)**

I, Sophia M. Rios, declare as follows:

1. I am an attorney duly licensed to practice before all of the courts in the State of California. I am one of the counsel of record for Plaintiff.

2. This Declaration is made pursuant to Section 1780(d) of the California Consumer Legal Remedies Act.

3. Defendant has done, and is doing, business in California, including in this District. Such business includes the marketing, promotion, distribution, and sale of its products within the State of California.

4. Plaintiff alleges that she made online purchases from Defendant from her devices while physically located in this District.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed November 13, 2025 at La Mesa, California.

/s/Sophia M. Rios
Sophia M. Rios, SBN 305801
BERGER MONTAGUE PC

*Counsel for Plaintiff*